UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JEREMIAS SERRANO,

        Plaintiff,

v.

JOHN DOE, OFFICER GILLIARD,
JOHNNY C. WRIGHT, N. CONYERS, and
LINDA OESAR,

        Defendants.

3:17-CV-01606 (CSH)

July 5, 2018

### INITIAL REVIEW ORDER

**HAIGHT,** Senior District Judge:

The Plaintiff, Jeremias Serrano, is currently incarcerated at Willard-Cybulski Correctional Institution. He has filed a *pro se* Complaint [Doc. 1-1], under 42 U.S.C. § 1983, against Correctional Officer John Doe, Correctional Officer Gilliard, Dr. Johnny C. Wright, Dr. Linda Oesar, and Nurse N. Conyers. For the reasons set forth below, the Complaint will be dismissed, with leave to file an amended complaint.

### I. Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against government actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." This requirement applies both where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed allegations are not required,

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). A complaint that includes only "labels and conclusions . . . a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement," does not meet the facial plausibility standard. *Iqbal*, 556 U.S. at 678 (internal quotation marks and alteration omitted).

Courts are "obligated to construe a *pro se* complaint liberally," but the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## II. Factual Allegations

These factual allegations, accepted as true only for the purposes of this Order, are taken from the numbered paragraphs at pages 5-7 of the Complaint [Doc. 1-1],[1] as well as the Exhibits to that filing.

---

[1] The Complaint was initially filed on September 25, 2017, at Doc. 1, in incomplete form, through no apparent fault of Plaintiff's own. This Order refers, throughout, to the corrected Complaint [Doc. 1-1], which filing was noted by the Docket Entry Correction [Doc. 6] of October 3, 2017.

On September 22, 2015 Plaintiff and a number of other inmates were to be transferred from Bridgeport Correctional Center ("Bridgeport") to Walker Correctional Institution ("Walker"). Early that morning, at 3:30 a.m., Corrections officers brought Plaintiff and other inmates to be escorted, with their property bags, to the Admitting and Processing area. Compl. ¶ 1; Exs. to Compl. at 1. Prior to escorting the Plaintiff and the other inmates, prison officials handcuffed each inmate to a chain. *Id.* The inmates were expected to carry their bag of belongings in the hand that was not handcuffed to the chain. *Id.*

Plaintiff informed Correctional Officer Santiago (not named as a defendant to this action) that, because of bullets lodged in Plaintiff's left arm, he was unable to lift the property bag containing his personal belongings while shackled to the chain. *Id.* ¶ 1. Plaintiff asked Officer Santiago for permission to use the push cart to transport his personal belongings. *Id.* ¶ 2. Officer Santiago informed Plaintiff that he must ask Defendant Doe, the transporting officer, for permission to use the push cart. *Id.* Defendant Doe denied Plaintiff's request to use the push cart. *Id.* ¶ 3. Defendant Doe then unhooked Plaintiff from the chain, and cuffed Plaintiff's two hands together. *Id.* Plaintiff told Defendant Doe that he could not lift his belongings with two cuffed hands. *Id.* Defendant Doe told Plaintiff that he must carry his own belongings. *Id.*

Plaintiff picked up his bag and held it in front of his face. *Id.* ¶ 4. Another inmate guided Plaintiff as he walked towards the Admitting and Processing room. *Id.* With the bag obscuring his vision, Plaintiff could not see where he was going, and, at one point, his foot got stuck in a gutter and his ankle "snapped." *Id.* Plaintiff fell to the ground and screamed. *Id.* Officer Doe asked Plaintiff what had happened and Plaintiff explained that he had hurt his ankle, he could not stand up and needed a wheelchair. *Id.* Plaintiff asked Officer Doe to call a "Code White," to get a

wheelchair. *Id.* Officer Doe refused to get a wheelchair and ordered Plaintiff to hop, on one foot, to the medical department. *Id.* Plaintiff hopped about half a mile, up steps and through doors and metal detectors, to get to the medical department. *Id.* ¶ 5.

Plaintiff explained to medical personnel what had happened to his ankle and they provided him with ice, ibuprofen, and a wrap. *Id.* ¶ 6. A lieutenant took photos of Plaintiff's injury and made Plaintiff sign an incident report. *Id. See also* "Medical Incident Report," Exs. to Compl. at 13. Prison officials transferred Plaintiff to Walker later that day. Compl. ¶ 6.

On September 23, 2015, medical personnel at Walker gave Plaintiff ice, ibuprofen and a cane. *Id.* ¶ 7. From that point until December 2015, the only care Plaintiff received for his injury was ibuprofen. *Id.* ¶ 8. In December 2015, Plaintiff was transferred to Enfield Correctional Institution ("Enfield"). *Id.* ¶ 9. At Enfield, medical personnel took away Plaintiff's cane, and provided him with ibuprofen and a wrap. *Id.*

In May 2016, prison officials sent Plaintiff to Osborn Correctional Institution ("Osborn") for an X-ray. *Id.* ¶ 10. Prison officials at Osborn sent Plaintiff back to Enfield six months later. *Id.* Plaintiff underwent another X-ray. *Id.* Prison officials transferred Plaintiff to the University of Connecticut Health Center ("UConn"). *Id.* Medical personnel at UConn informed Plaintiff that he had broken fragments, ripped tissue and fluid in his ankle. *Id.* These ongoing conditions were the cause of the chronic swelling in Plaintiff's ankle. *Id.* Physicians at UConn instructed Plaintiff to do exercises. *Id.* ¶ 11. At the time, Plaintiff's ankle was still very painful and he could not sleep. *Id.*

In March 2017, Plaintiff underwent ankle surgery at UConn. *Id.* ¶ 12. For three months after the surgery, Plaintiff's ankle was in a cast. *Id.* He did not receive any physical therapy. *Id.* In June 2017, a UConn surgeon put an orthopedic boot on Plaintiff's ankle. *Id.* ¶ 13. A month later, the boot was removed. *Id.* Plaintiff was able to resume his daily activities. *Id.*

## III. PLAINTIFF'S CLAIMS FOR RELIEF

Plaintiff claims that medical care for his ankle injury was delayed and he did not receive surgery in a timely fashion. He experienced pain and suffering and his daily activities were severely restricted during the eighteen months between the injury on September 22, 2015, and the ankle surgery in March 2017. For relief, he seeks monetary damages for pain and suffering. The Court construes the Complaint as asserting Eighth Amendment claims of deliberate indifference to medical needs against all named Defendants.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, who "must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted).

To the extent that the Plaintiff seeks damages from the defendants in their official capacities, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). If a suit against a state official in his or her official capacity seeks money damages, the state is deemed the real party in interest, and is thus entitled to Eleventh Amendment immunity, as any damages awarded would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986). However, a plaintiff may sue individual Defendants under § 1983 for money damages. *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993). The Eleventh Amendment bar that applies when a plaintiff sues a defendant in their official capacity does not apply when the Defendant is sued in their individual capacity. *Id.* For these reasons, all claims

against Defendants in their official capacities are dismissed, pursuant to 28 U.S.C. § 1915A(b)(2), as barred by the Eleventh Amendment.

### A. Elements of an Eighth Amendment Claim of Deliberate Indifference

The Eighth Amendment's prohibition on cruel and unusual punishment protects against deliberate indifference to a prisoner's serious medical needs by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate deliberate indifference to medical needs, a plaintiff must allege harmful acts or omissions that deny or delay unreasonably access to needed medical care or wantonly cause infliction of unnecessary pain. *Id.* at 104-06. Accordingly, not all failures by prison staff to provide medical care rise to the level of a constitutional violation. *Id. See also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). "[A] prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184.

The deliberate indifference standard consists of two prongs: (1) the alleged deprivation must be, objectively, "sufficiently serious" to produce death, degeneration, or extreme pain; and (2) subjectively, the defendant must have been aware of a substantial risk that the inmate would suffer serious harm by defendant's act or omission. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006*); Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

As to the first prong, "[a] 'serious medical need' exists where, objectively, the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Dotson v. Fischer*, 613 F. App'x 35, 38 (2d Cir. 2015) (internal quotation marks

6

omitted) (quoting *Harrison v. Barkly*, 219 F. 3d 132, 136 (2d Cir 2000).

> When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious[] to support an Eighth Amendment claim.

*Smith*, 316 F.3d at 185 (internal quotation marks omitted).

As to the second, subjective prong, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions:

> To establish deliberate indifference, [the plaintiff] must show that [the defendant] harbored the requisite mental state while he denied . . . treatment. He must show that [the defendant] knew of and disregarded an excessive risk to [plaintiff]'s safety; that he not only was aware of facts from which a reasonable person would conclude [plaintiff] faced an excessive risk, but that he personally actually drew that inference.

*Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (per curiam). *See also Salahuddin*, 467 F.3d at 279-80. Thus, an allegation of mere negligence is insufficient. Rather, the subjective element requires that an inmate allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280.

**B. The Medical Defendants**

I will first address Plaintiff's claims against Defendants Wright, Oesar, and Conyers (collectively, "the medical Defendants"). The medical Defendants are all employees of the Connecticut Department of Corrections Medical Department. Plaintiff asserts that Nurse Conyers worked at Bridgeport, Dr. Oesar worked at Enfield, and Dr. Wright worked at Osborn.

As to the objective first prong of his Eighth Amendment deliberate indifference claim,

7

Plaintiff has adequately alleged the seriousness of the deprivation he suffered. Plaintiff alleges that the ankle injury he suffered on September 22, 2015, resulted in swelling, significant pain, and an inability to go about his daily activities. These sequelae were not resolved until Plaintiff underwent ankle surgery and immobilization in the spring of 2017, eighteen months after his injury. Plaintiff alleges that his broken ankle was not even X-rayed until May 2016, more than seven months after his injury. The facts alleged establish that Plaintiff's injury created a serious medical need, and the lengthy delay in diagnosis and treatment of his injury constituted an objectively serious deprivation.

As to the subjective second prong of Plaintiff's Eighth Amendment claim, the facts alleged in the Complaint are inadequate. There are no factual allegations against the individual medical Defendants in the body of the Complaint – their names appear only in the caption and the list of defendants. Even giving the Complaint the liberal reading it is due, as a *pro se* pleading, Plaintiff has not succeeded in stating a claim upon which relief can be granted.

A medical incident report attached to the complaint reflects that Nurse Conyers examined Plaintiff after his fall at Bridgeport, noted that his ankle was swollen, but that he was not in acute distress. Exs. to Compl. at 3. Defendant Conyers provided Plaintiff with Motrin, ice, and an ace bandage, and recommended follow-up at Walker in the morning. *Id.* These facts, as represented by the incident report, do not suggest that Defendant Conyers was, subjectively, indifferent to Plaintiff's medical need, and are therefore insufficient to state a claim. The claims against Defendant Conyers aare dismissed, without prejudice to re-filing. *See* 28 U.S.C. § 1915A(b)(1).

There are no allegations that Dr. Oesar, at Enfield, was aware of Plaintiff's injury or that she examined or prescribed treatment for Plaintiff's injury. Plaintiff claims that upon his arrival at Walker, medical personnel provided him with ice, prescribed ibuprofen and issued him a cane. At Enfield in December 2015, the medical department allegedly took his cane away, but prescribed

ibuprofen and issued him a wrap for his ankle. Thus, Plaintiff has not alleged that Defendant Oesar or any other medical personnel at Enfield denied him treatment for his ankle injury. Rather, Plaintiff disagrees with the decision that he no longer required a cane during his confinement at Enfield. A disagreement with treatment does not constitute a viable Eighth Amendment claim. Furthermore, there are no other facts to suggest that Plaintiff made Defendant Oesar, or any other Enfield staff, aware that he was unable to ambulate effectively without a cane or that the treatment that she had prescribed, if, indeed, she was the one who prescribed his treatment, was somehow inadequate. Thus, Plaintiff has not allege that Defendant Oesar was deliberately indifferent to his medical needs. The claims against Defendant Oesar are dismissed, without prejudice to re-filing. *See* 28 U.S.C. § 1915A(b)(1).

Similarly, there are no allegations that Dr. Wright, at Osborn, was aware of Plaintiff's injury or that he examined or prescribed treatment for Plaintiff's injury. Plaintiff states that he was sent to Osborn for an X-ray, that he was sent back to Enfield six months later, and that, after a second X-ray, he was sent to UConn, where he was diagnosed with "broken fragments, ripped tissues, and fluids in [his] ankle." Compl. ¶ 10. Even if I infer that Defendant Wright was responsible for Plaintiff's care at Osborn, Plaintiff has not pleaded any specific facts as to the inadequacy of his care at Osborn. The evident six month lapse between Plaintiff's first X-ray and his diagnosis does not, standing alone, suggest deliberate indifference on the part of Defendant Wright, or anyone else. Further factual allegations would be needed to state a claim. The claims against Defendant Wright are dismissed, without prejudice to re-filing. *See* 28 U.S.C. § 1915A(b)(1).

To reiterate: In order to state a viable and plausible Eighth Amendment claim against one of these medical Defendants, Plaintiff must plead facts (not just conclusions) showing that the defendant was aware of Plaintiff's injury and serious medical needs, and was deliberately indifferent

9

to those needs.

### C. The C/O Defendants

Plaintiff's claims against Defendants Doe and Gilliard (collectively, "the C/O Defendants"), are slightly different – here, he alleges that the C/O Defendants were indifferent to his existing physical disability (limited use of one arm), in denying his request to carry his belongings with a cart, and that this indifference caused his injury, when – his vision obscured by the way his disability and his cuffed hands forced him to carry his belongings – he fell and injured his ankle. Plaintiff further alleges that, following the injury, Defendant Doe refused to call a wheelchair, forcing Plaintiff to hop, one-legged, to the medical department. The claims against the C/O Defendants, while factually distinct from the claims against the medical Defendants, rely on the same Eighth Amendment theory of deliberate indifference to serious medical needs.

As a preliminary matter, there is some uncertainty as to whether Plaintiff intends to name two C/O defendants or only one. It appears, from the totality of the Complaint, that Defendant Gilliard and Defendant Doe may be one and the same individual. The caption of the Complaint lists, as defendants, both a Correctional Officer Doe and a Correctional Officer Gilliard. In the description of Defendants on pages two and three of the Complaint, Plaintiff lists Bridgeport Correctional Officer John Doe and Bridgeport Correctional Officer Gilliard as the same person. In the body of the Complaint, Plaintiff only refers to Bridgeport Correctional Officer John Doe and describes him as the transferring officer. Compl. [Doc. 1-1] at 5-7. Two incident reports dated September 22, 2015 are attached as exhibits to the Complaint. Exs. to Compl. at 11-12. Both reports refer to the officer escorting inmates with their property bags as Correctional Officer Gilliard. *See id.* The reports also reflect that Defendant Gilliard escorted Plaintiff to the medical department. *See id.* These reports suggest that Defendant Doe *is* Defendant Gilliard. The question of whether Plaintiff

10

names one or two C/O Defendants is not material to the outcome of this Review Order, and my conclusions remain the same, whether or not there exists a Defendant Doe, distinct from Defendant Gilliard.

Turning to the substance of Plaintiff's claims against the C/O Defendants, refusal to remedy a prison condition that is objectively dangerous to a physically disabled prisoner may give rise to a Eighth Amendment claim. *See, e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (failure of prison officials to respond to amputee prisoner's complaint of inadequate and dangerous showering facilities could give rise to Eighth Amendment claim), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); *Lawson v. Dallas Cty.*, 286 F.3d 257, 262 (5th Cir. 2002) (prison officials' deliberately indifferent treatment of paraplegic inmate, including failure to provide "adequate mobility equipment," violated the Eighth Amendment).

Plaintiff alleges that when he asked to use a push cart to transport his belongings to the admitting and processing room, Defendant Doe denied the request. After being unhooked from the chain (while remaining handcuffed) Plaintiff was able to lift and carry his belongings and another inmate guided him as he walked. When Plaintiff's foot got stuck and he fell and injured his ankle, Defendant Doe allegedly refused to make arrangements for a wheelchair to transport him to the medical department. Plaintiff hopped to the medical department on his uninjured leg. Plaintiff does not allege that he suffered any further injury to his ankle because he had to travel to the medical department without the aid of a wheelchair. Once at the medical department, Defendant Conyers treated Plaintiff's injury.

As to the first, objective prong of an Eighth Amendment claim for deliberate indifference to serious medical needs, these allegations do not constitute a condition or conditions that rose to the level or a substantial risk of harm or a serious deprivation of a life necessity. Neither the denial of

11

the push cart for Plaintiff's belongings, nor the denial of a wheelchair following Plaintiff's injury, is an objectively serious deprivation. While it may well have been more comfortable or convenient for Plaintiff to push his bag of belongings in a cart or travel to the medical department in a wheelchair after he hurt his ankle, the Eighth Amendment does not require prison officials to provide comfortable prisons. *Farmer*, 511 U.S. at 832. Thus, the conditions to which Officer Doe/Gilliard subjected Plaintiff do not constitute a sufficiently substantial deprivation for Eighth Amendment purposes.

Failing to find an objectively serious deprivation, I decline to consider the second, subjective prong, as to the C/O Defendants' subjective awareness of risk to the Plaintiff. The claims against Defendants Doe and Gilliard are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## IV. CONCLUSION

All federal claims against the Defendants are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1), without prejudice. Plaintiff, may, if he wishes, file an amended complaint to remedy the defects identified by this order.

If Plaintiff wishes to press his claim against the C/O Defendants, he must plead additional facts establishing an objectively serious deprivation of medical need. He should also clarify whether Defendant Gilliard and Defendant Doe are indeed separate individuals, or whether they are one and the same.

The amended complaint must identify, with specificity, any prison officials and/or medical staff who allegedly were deliberately indifferent to his pre-existing disability and his serious ankle injury of September 22, 2015. To satisfy the subjective element of his claim, Plaintiff must describe, with specificity, how those individuals were deliberately indifferent. The amended complaint should include Plaintiff's efforts, if any, to make Defendants aware of his injury, the symptoms associated

with his injury and his need for medical treatment, and each Defendant's response to this information.

If no amended complaint is filed on or before **August 6, 2018**, the Clerk is directed to close the case and enter judgment for Defendants.

It is SO ORDERED.

Dated: New Haven, Connecticut
　　　　July 5, 2018

　　　　　　　　　　　　　　　　　　　　　　　　*/s/Charles S. Haight, Jr.*
　　　　　　　　　　　　　　　　　　　　　　　　CHARLES S. HAIGHT, JR.
　　　　　　　　　　　　　　　　　　　　　　　　Senior United States District Judge